# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Farmers Crop Insurance Alliance,**

       *Plaintiff/Counterdefendant*,

**v.**
                                        **Case No. 3:05-cv-170**
                                        **Judge Thomas M. Rose**

**Jerry Laux and Jasen Laux,**

       *Defendants/Counterclaimants*.

---

## ENTRY AND ORDER GRANTING DEFENDANTS MOTION TO CONFIRM ARBITRATION AWARD, DOC. 15, AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER. DOC. 4.

---

The instant case stems from Plaintiff Farmers Crop Insurance Alliance's (hereinafter "Plaintiff") denial of an insurance indemnity claim by Defendants Jerry Laux and Jason Laux (hereinafter "Defendants"). Defendants are brothers who reside in Ohio, but raise crops including soybeans in Rapides Parish, Louisiana. (Doc. 1, ¶ 5,6). Plaintiff seeks a declaration that it does not owe Defendants indemnity for acres of allegedly failed crops and acres that Defendants were allegedly prevented from planting. The matter was initially before the Court on a motion for a temporary restraining order, (doc. 4), to prevent an arbitration hearing, a motion which Judge Walter H. Rice denied at an oral hearing on May 20, 2005. After the arbitration hearing, Defendants filed a counterclaim, (doc. 17), seeking a declaration that they are entitled to indemnities from Plaintiff on crop insurance policies for prevented planting and failed acres. (Doc. 17).

## I.      FACTS AND PROCEDURAL HISTORY

This matter is currently before the Court on Defendants' Motion to Confirm Arbitration Award.  (Doc. 15).  The Arbitration Award was made pursuant to the terms of an insurance agreement that was entered into by Defendants with Plaintiff and pursuant to the Federal Arbitration Act.  (Doc. 15-1).  Pursuant to the terms of the federally regulated and reinsured Crop Revenue Coverage Insurance Policy (hereinafter "insurance policy"), if Plaintiff and Defendants "fail to agree on any factual determination made by [Plaintiff], the disagreement will be resolved in accordance with the rules of the American Arbitration Association."  (Doc. 1, Ex. 2, at 16 ¶ 20) (quoting 7 C.F.R. § 457.8 para 20(a)).

On January 14, 2005, Defendants filed a demand for arbitration with the Central Case Management Center of the American Arbitration Association, after the parties were otherwise unable to resolve certain factual disputes regarding 41.0 acres of Defendants' allegedly insurable land.  (Doc. 15-2).  Defendants sought indemnification from Plaintiff for 41.0 acres of soybeans that failed and for 1,844.7 acres of soybeans Defendants were prevented from planting in 2004.  (Doc. 15-3).  In adjudicating the matter, the Arbitrator found facts that favor Defendants, including a finding that Defendants planted and harvested approximately two thousand acres in 2003.  Plaintiff opposes Defendants' Motion to Confirm Arbitration Award insofar as it seeks to enforce this finding, alleging "it is clear that the Arbitrator committed a material mistake of fact." (Doc. 19 at 3).

## II.     Standard of Review

The standard for reviewing an arbitration award is "one of the narrowest standards in all of American Jurisprudence."  *Tennessee Valley Auth. v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 514-15 (6th Cir. 1999).  In an ordinary arbitration confirmation proceeding, the Court merely converts an arbitration award into a final judgment.  The Court

does not substantively resolve a particular dispute. *Id.* The instant case is somewhat unique, however, in that the parties have only agreed to arbitrate disagreements concerning factual disagreements. In all cases in which parties have agreed to arbitration, however, Courts must accord an arbitrator's decision substantial deference because the parties have agreed that the arbitrator, and not the court, will determine matters within the scope of the arbitration agreement. *International Paperworkers International Union, AFL0-CIO v. Misco*, 484 U.S. 29, 37-38, 108 S. Ct. 364 (1987).

Courts will uphold an arbitration award when it "draws its essence" from the collective bargaining agreement. *Sterling China Co. v. Glass Workers Local No. 24*, 357 F.3d 546, 556 (6th Cir. 2004). An award does not "draw its essence" from the collective bargaining agreement when any of the following is true: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Id.*

## III. Analysis

In opposing Defendants' Motion to Confirm Arbitration Award, Plaintiff asserts that the Arbitrator's second finding of fact (hereinafter Finding of Fact No. 2) is "clearly a mistake since it is directly counter to the evidence that both Defendants (Claimants) and Plaintiff (Respondent) presented at the arbitration hearing and in their pre- and post-hearing filings." Doc. 19 at 1. Finding of Fact No. 2 of the Arbitration Award reads as follows:

> Claimants [Defendants], by testimony and exhibits, proved that [their agent] A.J. Fowler planted and harvested approximately two hundred fifty (250) acres of FSN 3308 [the allegedly insurable plot of land] in 2001, approximately two hundred fifty (250) acres in 2002, and approximately two thousand acres (2,000) in 2003. (Doc. 15-2).

3

According to Plaintiff, the evidence of both Plaintiff and Defendants failed to establish that two thousand acres (2,000) were planted and harvested in 2003. (Doc. 19-1). Therefore, Plaintiff asserted that the above finding was a material misstatement of fact. (Doc. 19-1). Plaintiff advanced three arguments in support of their position: (1) that the Arbitrator's award contained a material misstatement of fact; (2) that said misstatement of fact prejudiced Plaintiff's interest; and (3) that the Arbitrator's mistake of fact changed the result of the award. (Doc. 19-1).

In support of their position, Plaintiff cites to a variety of case law that has been superceded by Supreme Court precedent or is simply inapposite. The earliest of the cases Plaintiff cites is *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182 (1953). The watershed mark in arbitration cases, however, is 1960, when the Supreme Court issued three decisions known as the "Steelworkers Trilogy." *See United Steelworkers v. Am. Mfg. Co*., 363 U.S. 564, 567-68, 80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 80 S. Ct. 1347 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 597, 80 S. Ct. 1358 (1960). These cases strongly endorsed the use of arbitration as a means by which disputes arising under collective bargaining agreements may be resolved. They delineated the function of the courts in deciding questions concerning arbitral jurisdiction in an extremely narrow manner. The Court held that the function of a court with respect to arbitration is limited to: (1) assuring that the claim is governed by the contract; (2) ordering parties to arbitration unless the arbitration clause is "not susceptible of an interpretation that covers the asserted dispute"; and (3) refraining from reviewing the merits of an award so long as it "draws its essence from the collective bargaining agreement." *Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953 (6th Cir. 1999) (*citing Am. Mfg., 363 U.S. at 567-68, 80 S.

4

Ct. 1343; *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 80 S. Ct. 1347 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 597, 80 S. Ct. 1358 (1960)).

Plaintiff cites to the Court *National Post Office Mailhandlers v. United States Postal Service*, 751 F.2d 834 (6th Cir. 1985), which interpreted the Steelworker's Trilogy to allow "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator exceeded his powers, or so imperfectly executed them that vacation may be proper." *Id*. at 843 (internal quotation omitted). Plaintiff also cites *Storer Broadcasting Co. v. American Federation of Television and Radio Artists*, 600 F.2d 45 (6th Cir. 1979), "We agree with Storer that there is absolutely no evidentiary support in the record before the arbitrator for this factual finding. Our search of the record revealed no testimony or documentary evidence to this effect." *Storer Broadcasting*, 600 F.2d at 48. It appears to the Court from these cases that, about a quarter century ago, the Sixth Circuit was more willing to scrutinize an arbitrator's findings of fact than the other circuits were, some of which were willing to modify findings of fact when they were both unsupported by the evidentiary record and contrary to public policy. *See Misco*, 484 U.S. at 35 & n.7.

In its 1987 *Misco* decision the Supreme Court clarified that no reason short of fraud or similar procedural irregularity sufficed to modify an arbitrator's finding of fact. *Id*. at 33-34. In *Misco* police observed a company employee named Cooper leave the company's building during work hours with two other men, to go to the company parking lot. *Id*. After the two other men returned to the building, police found Cooper in the back of the car with marijuana smoke throughout the car, and scales, marijuana ashes and gleanings in the front seat. *Id*. This incident

5

led to charges of possession of separate off-site quantities of marijuana, to which Cooper pleaded guilty. *Id*. Cooper, whose job the arbitrator found involved the operation of hazardous machinery that had caused numerous injuries in recent years, was fired by his employer for violating the company's long-standing rules against bringing narcotics and controlled substances onto plant property, relying on his presence in the parked car. *Id*. at 34-37. Astoundingly, the arbitrator decided that there was insufficient evidence of a company violation, as Cooper was in the back seat, while the other items were in the front seat. *Id*. The district court vacated the arbitrator's decision, which the United States Court of Appeals for the Fifth Circuit affirmed on appeal, due to the arbitrator's ignoring facts he knew to be true and the important public policy of workplace safety. *Id*.

The company's position before the Supreme Court, similar to Plaintiff's position here, was "that the arbitrator committed grievous error in finding that the evidence was insufficient to prove that Cooper had possessed or used marijuana on company property." *Misco*, 484 U.S. at 39. The Court responded, "No dishonesty is alleged; only improvident, even silly, fact finding is claimed. This is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." *Id*. "[A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *Id*. at 38. After *Misco* it is clear that courts no longer review an arbitrator's findings of fact short of allegations of "corruption, fraud, or undue means" or "misconduct [including] refusing to postpone the hearing…or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a).

The remaining bases for refusing to enforce an arbitrator's award refer not to errors in factual findings, but to legal conclusions. See, e.g., *Sterling China Co. v. Glass Workers Local*

*No. 24*, 357 F.3d 546, 556 (6th Cir. 2004) ("(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.").  The post-*Misco* cases Plaintiff cites to the Court fall into this category.  One example of these cases is *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418 (6th Cir. 1995), which Plaintiff quotes: "if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated."  *Id*. at 421.  A fuller quote would reveal though, that this applies only to an arbitrator's "resolution of certain questions of law…."  *Id.*  After *Misco*, "Parties who bargain for the facts to be found by an arbitrator…should not rely on judicial review of an arbitrator's decision to re-evaluate findings of fact even where improvident or erroneous.  Therefore, we decline to re-evaluate the factual determination of the Arbitrator…."  *Ohio Valley Coal Co. v. Pleasant Ridge Synfuels, L.L.C.*, 54 Fed. Appx. 610, 616 (6th Cir. 2002).  Thus, even if the arbitrator's finding of fact was "clearly a mistake" and "directly counter to the evidence…presented at the arbitration hearing," this Court will not re-evaluate the factual findings short of allegations of improprieties in the procedure.[1]

## IV.    CONCLUSION

Because the Court will not re-evaluate the factual findings of the Arbitrator short of allegations of improprieties in the procedure, Defendants' Motion to Confirm Arbitration Award,

---

[1] Should a reviewing court disagree with the conclusion of this opinion, the Court finds, alternatively, that the record before the Court reveals that the Arbitrator had sufficient testamentary and documentary evidence to support Finding of Fact No. 2.  (Doc. 15-3, p. 4); (Doc. 19-2, p. 1); (Doc. 19-3, p. 2); (Doc. 19-4, p. 5); (Doc. 19-5, p. 3); (Doc. 19-6, p. 1).  A plain reading of Finding of Fact No. 2 illustrates Defendants "planted and harvested *approximately* two thousand acres (2,000) in 2003."  (Doc. 15-2 (emphasis added)).  Nowhere in the record is it ever asserted by Plaintiff or Defendants that all two thousand acres (2,000) were harvested.  (Doc. 15-3, p. 4); (Doc. 19-2, p. 1); (Doc. 19-3, p. 2); (Doc. 19-4, p. 5); (Doc. 19-5; p. 3); (Doc. 19-6, p. 1).

(doc. 15), is **GRANTED.**  As noted above, the Court has previously **DENIED** Plaintiff's Motion

for Temporary Restraining Order.  (Doc. 4).

      **DONE** and **ORDERED** in Dayton, Ohio, this Friday, March 31, 2006.


                  s/Thomas M. Rose

            _____
                  THOMAS M. ROSE
            UNITED STATES DISTRICT JUDGE