# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**Farmers Crop Insurance Alliance,**

                Plaintiff/Counterclaim Defendant,

-vs-

**Jerry Laux and Jasen Laux**

                Defendants/Counterclaimants.

**Case No. 3:05-cv-170**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. #25); GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. #30) AND GRANTING DEFENDANTS DECLARATORY RELIEF**

---

This matter arises from Plaintiff/Counterlcaim Defendant Farmers Crop Insurance Alliance's (hereinafter "Plaintiff") denial of an insurance claim made by Defendants/Counterclaimants Jerry Laux and Jasen Laux (hereinafter "Defendants"). The Defendants are father and son who reside in Ohio but raise crops, including soybeans, in Rapides Parish, Louisiana.

The Plaintiff seeks a declaration that it properly applied the policy terms and other federally-mandated procedures to the Defendants' claims; that it has satisfied all of its obligations under the terms of the applicable insurance policies; and that Defendants are entitled to no further relief from the Plaintiff. The Defendants counterclaim seeking a declaration that they satisfied all obligations imposed by the insurance policy; that the Plaintiff did not satisfy all of its obligations imposed by the policy; that Plaintiff did not properly apply the terms and other federally-mandated procedures to their claims; that Jerry Laux is entitled to an indemnity in the amount of $69,997, excluding interest for prevented planting and $5,184 for failed acres; that

Jasen Laux is entitled to an indemnity in the amount of $59,999, excluding interest, for prevented planting and $4,445, excluding interest, for failed acres; and that Defendants are entitled to an award of pre-judgment interest, post-judgment interest and attorneys fees and costs.

Plaintiff's Motion for a Temporary Restraining Order to prevent an arbitration hearing was previously denied. (Doc. #26 p.1.) Following the arbitration hearing and issuance of an arbitration award, Defendants' Motion To Confirm Arbitration Award was granted.[1] (Id.)

Now before the Court are Motions for Summary Judgment filed by the Plaintiff (doc. #25) and by the Defendants (doc. #30). Both of these motions are now fully briefed and ripe for decision. A background will first be set forth followed by an analysis of the motions.

## BACKGROUND

The crop insurance policies involved here were issued subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. §1501 *et seq.*[2] The FCIA was enacted in 1938 by Congress "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in

---

[1]The Court based its decision to confirm the Arbitration Award to a great extent upon cases involving the interpretation of collective bargaining agreements. However, courts have applied this same reasoning to cases that were decided pursuant to the American Arbitration Act and did not involve collective bargaining agreements. *Wachovia Securities, Inc. v. Gangale*, 125 Fed. Appx. 671, 677, 2005 WL 612024 at **4 (6th Cir. Mar. 16, 2005)(court could not reconsider merits of arbitration award under the Federal Arbitration Act even when a party alleged that the award rested on errors of fact or on misinterpretation of the contract); *The Ohio Valley Coal Co. v. Pleasant Ridge Synfuels, L.L.C.*, 54 Fed. Appx. 610, 613, 2002 WL 31890927 at **2 (6th Cir. Dec. 23, 2002)(an arbitrator's decision is reviewed on an extremely narrow basis even where it involves "improvident, even silly, fact-finding"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420-21(6th Cir. 1995)(a federal court may set aside an arbitration award that was procured by corruption, fraud, or undue means, where there was evidence of partiality, corruption, misconduct, or misbehavior on the part of the arbitrator or where the arbitrator exceeded his or her powers.)

[2]The Plaintiff submitted a "Statement of Undisputed Facts" in support of its Motion for Summary Judgment. (Doc. #25.) While many of these facts are disputed by the Defendants, those that are not form the basis for the background up to the point where the Arbitrator's Finding of Facts is presented.

devising and establishing such insurance." *Williams Farms of Homestead, Inc. v. Rain and Hail Insurance Services, Inc.*, 121 F.3d 630, 633 (11th Cir. 1997)(quoting 7 U.S.C. § 1502). Under the original scheme of the FCIA, only the Federal Crop Insurance Corporation ("FCIC") issued crop insurance policies and handled claims on those policies. *Id.*

The FCIA was then amended by Congress in 1980 to, among other things, authorize the FCIC to use private insurance companies to provide crop insurance to farmers.[3] *Id.* These private insurance companies sell and service crop insurance policies and are reinsured by the FCIC. *Id.* The Plaintiff in this case is one such company that sells and services crop insurance and is reinsured by the FCIC's replacement, the Risk Management Agency ("RMA"). *Nobles v. Rural Community Insurance Services*, 122 F.Supp.2d 1290,1292 (M.D. Ala. 2000). The RMA is a wholly government-owned corporate body and agency within the Department of Agriculture charged with implementing a nationwide crop insurance program. *Id.* at 1294.

The RMA establishes standard policy guidelines, including terms and conditions, which are to be included in any crop policy issued by a private insurance company. *Nobles*, 122 F.Supp.2d at 1292. These terms and conditions must be included in the crop policy in order for the private insurer to obtain reinsurance from the RMA. *Id.* In this case, the Parties do not dispute that the crop insurance policies at issue comport with the standard policy guidelines issued by the RMA.

The terms and conditions provided by the RMA preempt any contrary state laws that

---

[3]Under the present scheme, the RMA both insures farmers directly and reinsures private companies who insure farmers. *Williams Farms*, 121 F.3d at 633.

would apply to other insurance contracts normally issued by private insurers.[4] *Id.* at 1294. However, the RMA has not extinguished state law causes of action that may arise from tortious conduct by private companies selling RMA-approved reinsurance contracts. *Id.*

Turning now to the policies at issue, in 2002, the Defendants purchased crop revenue coverage insurance[5] (the "CRC Policy") from IGF Insurance Company ("IGF") to cover their individual ownership shares of their intended joint crops in Rapides, Louisiana. This coverage continued into crop year 2003 under the terms of the policies.

Due to IGF's financial problems, RMA randomly transferred the policies to North Central Crop Insurance, Inc, in 2003. North Central Crop Insurance and Blakely Crop Hail, Inc. then merged to create Farmers Crop, the Plaintiff in this case. The Plaintiff then assigned Jerry Laux policy number 17-801-0001065 and Jasen Laux policy number 17-801-0001066. The Defendants coverage under these policies continued into crop year 2004 under the terms of the policies.

The Defendants leased approximately 2000 acres located on Farm Serial Number ("FSN") 3308[6] from A. J. Fowler in Rapides Parish for crop year 2004. They then planted 41.0 acres of soybeans and claimed that they were prevented from planting a remaining 1849.7 acres.

---

[4] The Plaintiffs cite *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947) for the proposition that a policyholder is bound by the regulations and policy terms promulgated under the FCIA which are binding irrespective of the farmer's knowledge. However, *Merrill* does not apply here. *Merrill* involved a claim brought against the FCIC and not against a private insurer such as the Plaintiff in this case. In fact, the *Merrill* court said, "we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company." 332 U.S. at 383.

[5] The CRC basic provisions are entitled "Crop Revenue Coverage (CRC) Insurance Policy," are assigned number 2004-NCIS-700B-CRC and are found in the record as Ex. 2 of Plaintiff's Complaint for Declaratory Relief (doc. #1).

[6] An FSN, also known as a Farm Number, is a number that the United States Department of Agriculture ("USDA") Farm Service Agency and other USDA agencies use to describe particular farms and acreage. 7 C.F.R. § 718.2.

The Defendants subsequently made claims on their 2004 crop which the Plaintiff denied. The Defendants then sought arbitration pursuant to the terms of the CRC Policy.

One of the standard terms and conditions provided by the RMA and included in the CRC Policy involves arbitration of disputes. RMA-approved crop insurance contracts provide that any dispute about "any factual determination" made by a private insurance company "will be resolved in accordance with the rules of the American Arbitration Association." *Id.* (citing 7 C.F.R. §457.8 ¶ 20(a)); CRC Policy ¶ 20.

In this case, after the Court declined, at Plaintiff's request, to prevent arbitration, an arbitration was conducted. The arbitration hearing held on May 23, 2005, was conducted in accordance with the CRC Policy requirements.

Although Plaintiff continues to challenge the Arbitrator's findings of fact, the Arbitration Award has been confirmed by this Court. The Findings of Fact set forth in the Arbitration Award are, therefore, applicable to the pending Motions for Summary Judgment and are as follows:

1. Claimants [Defendants] never farmed in Rapides Parish prior to crop year 2002.

2. Claimants [Defendants], by testimony and exhibits, proved that A. J. Fowler planted and harvested approximately two hundred fifty (250) acres of FSN 3308 in 2001, approximately two hundred fifty (250) acres in 2002, and approximately two thousand acres (2000) in 2003.

3. Claimants [Defendants], each, applied for federally-reinsured CRC policies for crop year 2002 from IGF Insurance Company in 2002, to cover their individual ownership shares of their intended joint crops in Rapides Parish, Louisiana. Claimants [Defendants] mailed the forms provided to Claimants [Defendants] by IGF and designated Exhibit "4" at the arbitration hearing as their crop year 2002 applications for insurance.

4. Claimants' [Defendants'] Rapides Parish CRC coverage continued into crop year 2003, and then into 2004 under the terms of the CRC policies. Due to IGF's financial problems in 2003, the USDA Risk Management Agency (RMA)

randomly transferred Claimants' [Defendants'] policies to Farmers Crop predecessor (North Central Crop Insurance, Inc.).

5. Claimant [Defendant] Jerry Laux, received Farmers Crop CRC Policy No. 17-801-0001065 and second Claimant [Defendant] Jasen Laux, received Farmers Crop CRC Policy No. 17-801-0001066 for the 2004 crop year.

During the hearing, there was considerable conflict in testimony and argument of counsel whether or not Respondent [Plaintiff] timely received Exhibit "4", and whether or not Claimants [Defendants] were under any obligation to submit supplemental or additional forms (intended acres report). The 2002 form (intended acres report) had been furnished by the predecessor insurance company, IGF, had a form with the words marked "Estimated Acres," rather than the language "intended acreage." The Claimants [Defendants] are lay person farmers, and the Respondent [Plaintiff] is a sophisticated well-staffed corporation, as was presumably its predecessors. No convincing evidence was furnished by Respondent [Plaintiff] that Claimants [Defendants] were required, or supposed to know, that supplemental or additional intended acreage reports should have been submitted. It was not Claimants' [Defendants'] choice, or wish, that the insurance company with which they had originally contracted failed, and its assets subsequently be involuntarily transferred.

6. Claimants [Defendants] were never given any forms or documents by Respondent [Plaintiff], or their agent, to report intended acres in 2003, or 2004. The agent for the Respondent [Plaintiff], Mr. Gary Morgan, by testimony indicated that the only time the insured reports intended acreage is when one initially applies for insurance. There was no testimony or evidence that any request for supplemental forms or reports accompanied the policies furnished by Respondent [Plaintiff] to Claimants [Defendants].

7. Claimants [Defendants] notified Respondent's [Plaintiff's] agent, Mr. Gary Morgan, by telephone that they were prevented from planting all but 41.0 acres on June 14th, which was within seventy-two (72) hours of the June 15th final claim date. Mr. Morgan submitted written notice of loss to the Respondents [Plaintiffs] on that same date. The final plant date for soybeans in Rapides Parish is June 15th. The testimony of Mr. Laux proved as a matter of fact that he offered to meet the adjuster, Mr. Ronnie Harris, at the farm. However, the adjuster told him it was unnecessary since he had all the maps and knew where the farm was.

8. The testimony of Mr. Morgan and Mr. Laux proved as a matter of fact that the Claimant [Defendant] inquired about the status of their failed acres at some point in the summer of 2004, and probably in July or early August. It is further found as a matter of fact that Mr. Morgan resubmitted the claim in early December after the concern that the claim had not yet been acted on. Mr. Morgan was an

-6-

employee of the Respondent [Plaintiff], not the Claimants [Defendants]. The testimony of Mr. Laux further proved that Mr. Harris never met with either of the Claimants [Defendants] until some time in December, and that the Claimants were never provided anything to sign prior to that meeting. There is no documentation of any inspection of FSN 3308 (which includes the 41.0 failed acres) taking place anytime from the notice of loss on June 14th, until the middle of December.

9. The landlord, not the Claimants [Defendants], actually disked up and destroyed the 41.0 failed acres. There was not written consent filed by the Respondent [Plaintiff], but there was also no evidence presented that the Claimants [Defendants] (the tenants) had any power or authority to prevent Mr. A.J. Fowler (the landlord), from plowing the 41.0 acres, as by November it was clear that Claimants [Defendants] would not rent again. When Respondent's adjuster did finally arrive in December (after the notice of loss being provided June 14th), and as a result of the landlord's plowing of the crops, there were no crops remaining on the 41.0 acres, and the adjusters were obviously unable to appraise the crops.

10. Farmers Crop's [Plaintiff's] adjusters determined that the crops had been destroyed without consent ("WOC"). Jerry Laux executed production work sheets (Exhibits "11-D" and "11-E") and Non-Waiver Agreements (Exhibits "11-C" and "11-E") for each policy that reflected that determination and as furnished by Respondent [Plaintiff] to Claimants [Defendants]. Farmers Crop [Plaintiff] denied Claimants' [Defendants'] claims on the 41.0 acres, and identical letters were sent to each Claimant [Defendant] on February 12, 2005 (Exhibits "11" and "11-E").

The facts demonstrate that the Claimants insured complied with, and completed, all requisites to receive the insurance policies to which they were entitled, and did not know that Respondent [Plaintiff] was not in receipt of all documents from their former insurer, nor did Respondent [Plaintiff] request supplemental forms. Furthermore, notice of loss of the failed planted acres was timely and proper and failure to obtain written consent to destroy the planted acreage was made impracticable or impossible due to the extreme lateness of Respondent's [Plaintiff's] acting on the notice.

These facts, when applied to the policies, predict an award in favor of Claimants [Defendants]. However, such a result cannot be reached by the Arbitrator in this fact finding hearing, but must await another judicial proceeding. No amount can be awarded to Claimants [Defendants] pursuant to the policies.

(Defendants' Motion To Confirm Arbitration Award (doc. #15), Ex. 1 American Arbitration

Association Award 7/5/05.) Having summarized the relevant facts, the standard of review for the

Motions for Summary Judgment will next be set forth.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot

-8-

rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c). The analysis next turns to Plaintiff's Motion for Summary Judgment.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff asserts that the Defendants cannot prove which, if any, of the acres they

held in 2004 were planted and harvested in 2001, 2002 or 2003 or that their acreage qualified as "insured acreage" under the terms and conditions of the CRC Policy. The Defendants respond that they have performed all prerequisites for coverage under the terms of the CRC Policy.

In support of its assertion, the Plaintiff offers five arguments. Each argument will be addressed seriatim.

A. Defendants Did Not Qualify for Prevented Planting Coverage In 2004 Because They Failed To Submit Intended Acreage Reports for Crop Year 2004

The Plaintiff argues that the Defendants did not qualify for prevented planting under the CRC Policy because they did not comply with CRC Policy ¶18(e)(1)(i)(B). Paragraph 18(e)(1)(i)(B) provides that, when a farmer has not planted any crop in the county in the last four previous years or has not received a prevented planting insurance guarantee, the only acres that he can insure for prevented planting coverage are those that he designates on an Intended Acreage Report that is submitted to and accepted by the insurer before the sales closing date for that year. The Defendants respond that they had intended acreage reports on file for 2004 because they submitted intended acreage report when they originally purchased their policies in 2002 and were never provided with an opportunity to file supplemental reports by Plaintiff, or its predecessor.

The Plaintiff first argues that the Defendants did not plant any crops in the Rapides Parish in years 2000, 2001, 2002 or 2003. To this, the Defendants agree. (Def. Answer To Plt. Compl. (doc. #10) ¶ 2.) However, the Plaintiff has not shown that the Defendants did not receive a prevented planting insurance guarantee in the four most recent years. Therefore, the Plaintiff has not shown that ¶18(e)(1)(i)(B) applies.

Even if ¶18(e)(1)(i)(B) did apply, the Arbitrator determined that this provision was

-10-

satisfied. The Defendants submitted Intended Acreage Reports, or the equivalent thereof, for crop year 2004.

The forms necessary to obtain CRC coverage for crop year 2002 were submitted and CRC coverage was provided. CRC coverage was then continued into crop year 2003 and 2004 under provisions of the CRC policies.

Specifically regarding the Intended Acreage Report, the Arbitrator determined that an "Estimated Acres" report was furnished to IGF by the Defendants in 2002. IGF, according to the Arbitrator, had a form with the words marked "Estimated Acres" rather than the Plaintiff's form marked "Intended Acres."

The Arbitrator went on to find that, "The Claimants are lay person farmers and the Respondent is a sophisticated well-staffed corporation, as was presumably its predecessors" and that "no convincing evidence was furnished by Respondent that Claimants were required, or supposed to know, that supplemental or additional intended acreage reports should have been submitted." Also, the Arbitrator found that, "The agent for the Respondent, Mr. Gary Morgan, by testimony indicated that the only time the insured reports intended acreage is when one initially applies for insurance." Finally, the Arbitrator found that, "[t]he facts demonstrate that the Claimants insured complied with, and completed, all requisites to receive the insurance policies to which they were entitled, and did not know that Respondent was not in receipt of all documents from their former insurer nor did Respondent request supplemental forms."

> B. Defendants Did Not Have a Payable Claim On Their 41 Planted Acres Because
> They Did Not Obtain Plaintiff's Consent Prior To Destroying Their Planted Crops

The Plaintiff next argues that the Defendants did not comply with CRC Policy ¶ 15(b)(1). Paragraph 15(b)(1) provides that the insured must obtain consent from the insurer before

destroying any of the insured crop that is not harvested. The Plaintiff argues that it could not appraise Defendants' losses on their 41 planted acres because when Plaintiff's representative arrived to meet with the Defendants on December 28, 2004, the crops had already been destroyed. The Defendants respond that the statement that Defendants failed to obtain consent from the Plaintiff is technically accurate but misleading based upon the factual findings of the Arbitrator.

The Arbitrator determined that the "notice of loss of the failed planted acres was timely and proper and failure to obtain written consent to destroy the planted acreage was made impracticable or impossible due to the extreme lateness of Respondent's acting on the notice." In support, the Arbitrator found that the Defendants notified Plaintiff's agent, Mr. Gary Morgan ("Morgan"), by telephone that they were prevented from planting all but 41.0 acres on June 14th which was before the June 15th final claim date, and that Mr. Morgan submitted written notice of loss to the Plaintiff on that same date. Mr. Laux then offered to meet with Mr. Harris ("Harris"), the adjuster, at the farm. Mr. Harris told Mr. Laux that it was unnecessary since Mr. Harris had all of the maps and knew the location of the farm.

The Defendants inquired about the status of their failed acres at some point, probably in July or early August of 2004. After hearing nothing, Morgan then resubmitted the claim in early December. On December 28, 2004, Harris, for the first time, attempted to inspect the failed crop and found that it had been destroyed. The failed crop was disked up by the landlord who, by November, had determined that the Defendants would not rent again.

In sum, the Notice of Claim was timely and proper and failure to obtain written consent to destroy was made impractical or impossible by the Plaintiff. Therefore, the Defendants did

have a payable claim on the 41.0 acres.

      C. <u>Defendants' Policies Only Covered Acreage Planted and Harvested In 2001, 2002 or 2003</u>

The Plaintiff next argues that the Defendants did not comply with CRC Policy ¶10(a)(1) and that the exception in ¶10(a)(1)(i)(c) does not apply. Paragraph 10(a)(1) provides that insurable acreage is acreage planted to the insured crop in which the insured has a share except acreage that has not been planted and harvested within one of the three previous crop years. Paragraph 10(a)(1)(i)(c) provides an exception to ¶10(a)(1) for acreage not planted due to an insurable cause of loss that prevented planting.

The Defendants respond that they have never asserted that FSN 3308 was insurable acreage under ¶10(a)(1)(i)(c), the prevented planting exception. Rather, they argue that A.J. Fowler planted approximately 2000 acres of FSN 3308 in 2003 and that any acreage that was not harvested by A.J. Fowler in 2003 was due to an insurable cause of loss as contemplated in ¶10(a)(1)(ii). Paragraph 10(a)(1)(ii) provides that acreage planted but not harvested due to an insurable cause of loss is an exception to the requirement that the acreage be planted and harvested within one of the three previous crop years.

However, the argument as to which exception to CRC Policy ¶10(a)(1) applies is irrelevant. The Arbitrator found that A.J. Fowler planted and harvested approximately 2000 acres of FSN 3308 in 2003.[7] Therefore, approximately 2000 acres of FSN 3308 is insurable in 2004 pursuant to CRC Policy ¶10(a)(1) because this acreage was planted and harvested by A.J. Fowler in 2003 even though the Defendants did not have a share in the crop that A.J. Fowler

---

[7]The Plaintiff indicates that it has no evidence that A. J. Fowler purchased crop insurance coverage or submitted a claim in 2003. Therefore, Plaintiff admittedly has no evidence that an exception to CRC Policy ¶10(a)(1) is applicable.

planted and harvested in 2003.

> D. Defendants Failed To Present Evidence Proving Which if Any of Its 2004
> Acres Were Planted and Harvested in 2001, 2002 or 2003

The Plaintiff next argues that the Defendants cannot prove that any acre or group of acres in FSN 3308 qualified as "insurable acreage" in 2004 under CRC Policy ¶10(a). However, paragraph ¶10(a) does not require the insured to identify the specific fields or acres with FSN 3308 that were planted and harvested in one of the three prior years.

The Arbitrator determined that A.J. Fowler planted and harvested approximately 2000 acres of FSN 3308 in 2003. This is enough to prevent the exclusion of 2000 acres of FSN 3308 from being insurable acres in 2004.

The Plaintiff points to A.J. Fowler's testimony at the arbitration hearing, his sworn affidavit and his financial records for the proposition that most of A.J. Fowler's 2003 soybean crop was not harvested. However, the Arbitrator, after hearing the evidence, determined otherwise and this Court and the Parties are bound by the factual determinations made by the Arbitrator.

> E. Federal Law Preempts Plaintiff's Claims for Damages Beyond an Indemnity

Plaintiff's final argument is that it is not liable for the payment of damages, attorneys' fees, or other charges in connection with any claim for indemnity under the CRC Policy pursuant to CRC Policy ¶ 26(a). Paragraph 26(a) provides that:

> Under no circumstances will we be liable for the payment of damages
> (compensatory, punitive, or other), attorney's fees, or other charges in connection
> with any claim for indemnity, whether we approve or disapprove such claim.

The Defendants respond by pointing to CRC Policy ¶25(c) which provides that:

> Your right to recover damages (compensatory, punitive, or other), attorney's fees

or other charges is limited or excluded by this contract or by Federal regulations. The Defendants also argue that Federal regulations do not exclude and, in fact, contemplate the recovery of damages from a private insurer such as the Plaintiff here.

The CRC Policy is a contract of insurance. Paragraph 26(a) of the CRC Policy limits liability for certain damages, attorney's fees and other charges as contemplated by Paragraph 25(c). The issue then becomes whether the Plaintiff can be sued under either state or federal law regarding, among other things, the enforceability of this contract provision.

While federal law, particularly the FCIA, does not contain language permitting suits against private companies reinsured by the FCIC, or its replacement the RMA, farmers are not prevented from suing their private crop insurance company under state law when that insurance company denies the farmer's claim. *Nobles*, 122 F.Supp.2d at 1269, 1294. Specifically, 7 U.S.C. § 1508(j)(2)(A) does not preempt state law claims against private insurance companies. *Nobles,* 122 F.Supp.2d at 1295; *Meyer v. Conlon*, 162 F.3d 1264, 1269 (10th Cir. 1998)(7 C.F.R. §400.352(b) and (b)(4) permits lawsuits based on an insurance agent's actions not authorized by the FCIA or the FCIC or RMA of which one such action is a failure to honor the terms of an insurance contract). The FCIA merely confers exclusive federal jurisdiction over lawsuits against RMA or the Secretary of Agriculture. *Nobles,* 122 F.Supp.2d at 1295.

Therefore, since the Plaintiff is a private insurer, the Defendants are not prevented from bringing state law claims against the Plaintiff. However, the Defendants have not done so.

Defendants' Supplemental Counterclaim (doc. #17) seeks declaratory relief pursuant to federal law and does not mention a state-law cause of action. While one declaratory judgment requested by the Defendants is a finding that "such other rights that the Court deems the parties

-15-

to have including an award… to Defendants of their attorney fees and costs and such other further legal and equitable relief as the Court deems proper," no specific state-law violation is cited nor is any specific state law violation cited in any subsequent briefing papers.

Rather than making state-law claims, the Defendants cite the Code of Federal Regulations as Federal law that expressly allows for recovery beyond what is available under the insurance contract if the damage is caused by the insurer or its agents. Specifically, 7 C.F.R. §400.176(b)[8][9] provides that:

> No policy of insurance reinsured by the Corporation [FCIC] and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of damages against the Company issuing the policy, other than damages to which the Corporation would be liable under federal law if the Corporation had issued the policy of insurance under its direct writing program, unless the claimant established in a court of competent jurisdiction or to the satisfaction of the Corporation in the event of a settlement, that such damages were caused by the culpable failure of the Company to substantially comply with the Corporation's procedures or instructions in the handling of the claim or in servicing the insured's policy, or where the Company or its agents were acting outside the scope of their authority (apparent or implied) in performing or omitting the actions claimed as a basis for the damage action.

Therefore, this Court, which is of competent jurisdiction, may, pursuant to Federal law, allow the Defendants damages beyond those for which the FCIC or the RMA would be liable if it had issued the CRC Policy if it determines that such damages were caused by the culpable failure of the Plaintiff to substantially comply with the FCIC's or the RMA's procedures or instructions in

---

[8] 7 C.F.R. §400.176 was substantially amended effective with the 2005 and subsequent crop years. *See* 69 FR 48652, 48730, Aug. 10, 2004.

[9] The Plaintiff argues that the Defendants cite 7 C.F.R. § 476.6 in support of their "mistaken" assertion and that 7 C.F.R. § 476.6 does not apply to CRC policies. In support, the Plaintiff notes that 7 C.F.R. § 457.6 does not apply to Defendants' policies. However, neither 7 C.F.R. § 476.6 or 457.6 are used here as a basis for a federal claim beyond indemnity.

the handling of the claim or in servicing the insured's policy, or where the Plaintiff or its agents were acting outside the scope of their authority in performing or omitting the actions claimed as a basis for the damage action. Federal law does not necessarily preempt claims for damages beyond indemnity in this case.

Conclusion

The Defendants qualified for prevented planting coverage in 2004. Further, the Defendants have a payable claim on the 41.0 acres that was planted and not harvested because the notice of loss of the failed planted acres was timely and proper and failure to obtain written consent to destroy the planted acreage was made impracticable or impossible due to the extreme lateness of Plaintiff acting on the notice. Also, the CRC Policies issued to the Defendants for crop year 2004 covered approximately 2000 acres that were planted and harvested in 2003 by A.J. Fowler and the Defendants are not required to identify specifically which of the 2000 acres in FSN 3308 were planted and harvested by A.J. Fowler in 2003. Finally, federal law does not preempt the Defendants' claims for damages beyond an indemnity.

Therefore, there are no genuine issues of material fact and the Plaintiff is not entitled to judgment as a matter of law. Plaintiff's Motion for Summary Judgment is OVERRULED. The analysis next turns to the Defendants' Motion for Summary Judgment.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Defendants seek summary judgment on Plaintiff's Complaint and on their Counterclaim against the Plaintiff arguing that they have performed all prerequisites for coverage under the terms of their CRC policies and applicable FCIC regulations. Plaintiff responds that it is entitled to judgment as a matter of law.

-17-

The Plaintiff's arguments with regard to the Defendants' Motion for Summary Judgment are the same as the arguments that they presented in their Motion for Summary Judgment. Each one of Plaintiff's arguments is addressed above and the results are adopted here for purposes of the Defendants' Motion for Summary Judgment.

In support of their assertions, the Defendants offer four arguments. Each argument will be addressed seriatim.

A. Defendants Are Entitled To Relief Under Federal Law

The Defendants argue that there are no preemption issues implicated in this case and they assert their right to relief under the FCIA and FCIC or RMA regulations. The Plaintiff agrees that federal law applies but argues for a different result from that argued for by the Defendants. Also, the Court has determined above that the Defendants have not brought a state-law claim. Therefore, federal and not state law applies to the resolution of this dispute and each of the issues raised by the Plaintiff has been addressed above using federal law and the CRC Policy provisions.

B. FSN 3308 Was Insurable Acreage Under ¶ 10 of Defendants' CRC Policies

The Defendants next argue, as they did regarding Plaintiff's Motion for Summary Judgment, that approximately 2000 acres of FSN 3308 was insurable acreage under CRC Policy ¶ 10. Paragraph 10 provides that land is insurable if it was planted and harvested within one of the three previous crop years. The Arbitrator determined that A.J. Fowler planted and harvested approximately 2000 acres of FSN 3308 in crop year 2003. Therefore, approximately 2000 acres of FSN 3308 was insurable under the CRC Policy in crop year 2004.

C. Defendants' Failure To Obtain Consent To Destroy Their 41.0 Planted Acres was Caused by the Plaintiff

The Defendants next argue that they were not responsible for the Plaintiff's failure to timely process their claims or inspect their losses on the 41.0 acres that they had planted. The Defendants then argue that they are entitled to relief on this issue pursuant to either 7 C.F.R. § 400.176(b) or 7 C.F.R. § 457.6.

As determined above, the Defendants had a prevented planting claim on 1849.7 acres and a payable claim on the 41.0 failed acres. The analysis then turns to the damages available.

The CRC Policy indemnifies the Defendants for these losses and the Defendants are entitled to the indemnification. The issue becomes whether the Defendants are entitled to damages beyond indemnification.

One federal law cited by the Defendants in support of their argument for damages beyond indemnification is 7 C.F.R. § 457.6.[10] Section 457.6, entitled "Good Faith Reliance On Misrepresentations," provides that, notwithstanding any other provision of the crop insurance contract, whenever "an agent or employee of the Corporation did in fact make such misrepresentation or take other erroneous action or give erroneous advice;… such insured shall be granted relief the same as if otherwise entitled thereto." Under this provision, the insured is not prevented from receiving damages otherwise available if the insured relies in good faith on misrepresentations made by the insurer. This provision does not, however, provide for specific damages. For specific damages, particularly damages beyond indemnity, other law must be consulted.

Federal law, particularly 7 C.F.R. § 400.176, allows damages beyond those provided in the policy if such damages were caused by the culpable failure of the Plaintiff to substantially

---

[10]7 C.F.R. § 457.6 was in effect for Defendants' 2004 policies but was withdrawn for 2005 and succeeding crop years. 69 FR 48652.

comply with the FCIC's or the RMA's procedures or instructions in the handling of the claim or in servicing the policy. Damages beyond those provided in the policy are also available where the insurer or its agents were acting outside the scope of their authority in performing or omitting the actions claimed as a basis for the damage action.

The Defendants were entitled to indemnification under the terms of their CRC Policies. They complied with and completed all requisites to receive the CRC Policies. Further, the notice of the failed planted acres was "timely and proper" and failure to obtain consent to destroy the planted acreage was made impracticable or impossible due to the extreme lateness of Plaintiff's acting on the notice. Yet, the Plaintiff refused to indemnify the Defendants for their losses.

The Plaintiffs failed to honor the terms of the CRC Policies. Failure to honor such terms is an action "not authorized by the FCIA, the regulations, or the contract." *Meyer*, 162 F.3d at 1269. Therefore, Plaintiff's failure to honor the terms of the CRC Policies is not authorized by the FCIA and the Defendants are entitled to damages beyond indemnity pursuant to 7 C.F.R. § 400.176.

The Plaintiffs also failed to follow RMA procedures. RMA loss adjustment procedures required the Plaintiff to inspect Defendants' prevented planting claims on FSN 3308 by August 10, 2004, which is no later than fifty-five days following Defendants' initial claim made on June 14, 2004. FCIC-25370 Prevented Planting Loss Adjustment Standards Handbook for 2004, ¶ 9(B)(2). No inspection took place until December 28, 2004. Therefore, Plaintiff failed to follow RMA procedures and is liable for damages beyond indemnification pursuant to 7 C.F.R. § 400.167 for this reason also.

     D. <u>Defendants' Failure To File Intended Acreage Reports In 2004 Resulted From the Errors, Omissions, or Misrepresentations of Farmers Crop and Its Agent</u>

The Defendants final argument is that their failure to file Intended Acreage Reports for 2004 was caused by the errors, omissions, or misrepresentations of the Plaintiffs. The Defendants further argue that they are entitled to relief for these errors, omissions or misrepresentations pursuant to either 7 C.F.R. § 400.176(b) or 7 C.F.R. § 457.6.

The Arbitrator determined that the Defendants completed an "Estimated Acres" report for IGF for the 2002 crop year when they initially applied for insurance and that, according to the agent at the time, this report was not required for subsequent years. The Arbitrator also determined that there was no convincing evidence that the Defendants were required or supposed to know that additional intended acreage reports needed to be submitted after Farmers Crop took over for IGF. In other words, the Defendants submitted the proper forms to IGF at the proper time, their insurance contract was subsequently transferred to Plaintiffs, Plaintiffs used forms with a different title and Plaintiffs did not inform the Defendants that new or supplemental forms were needed. Therefore, the Defendants' failure to provide the exact intended acreage reports that Plaintiffs needed resulted from the errors, omissions or misrepresentations of the Plaintiff and its agent.

As determined above, 7 C.F.R. § 457.6 does not prevent the Defendants from receiving damages otherwise available if the Defendants rely in good faith on misrepresentations made by the Plaintiff. This provision does not, however, provide for specific damages. For specific damages, particularly damages beyond indemnity, other federal law must be consulted.

The errors, omissions or misrepresentations by Plaintiff regarding the Intended Acreage Report is a failure by Plaintiff to substantially comply with claim procedures and a failure by Plaintiff to properly serve the policy. Therefore, the Defendants are entitled to damages beyond

indemnity pursuant to 7 C.F.R. § 400.176.

Conclusion

FSN 3308 was insurable acreage pursuant to the terms of the CRC Policy at issue here. Further, Defendants' failure to obtain consent to destroy their 41.0 planted acres was caused by the Plaintiffs failure to make a timely inspection of that crop. Also, the Defendants failure to file the Intended Acreage Reports for 2004 was a result of the errors, omissions or misrepresentations of the Plaintiff and its agent. Finally, the Defendants are entitled to relief under federal law.

Therefore, there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment is GRANTED.

The Defendants request for declaratory relief is also GRANTED. The Defendants satisfied all of their obligations under the terms of their CRC Policies and Farmers Crop did not satisfy all of its obligations thereunder. Further, Farmers Crop did not properly apply the terms of the CRC Policy and other federally-mandated procedures to the Defendants' claims.

As a result, Jerry Laux is entitled to an indemnity in the amount of $69,997 excluding interest, for prevented planting and an indemnity of $5,184, excluding interest, for his failed acres from Farmers Crop under policy number 17-801-0001065 for his 2004 soybean crop losses in Rapides Parish, Louisiana. Also, Jasen Laux is entitled to an indemnity in the amount of $59,999, excluding interest, for prevented planting and $4,445, excluding interest, for his failed acres from Farmers Crop under policy number 17-801-0001066 for his 2004 soybean crop losses in Rapides Parish, Louisiana.

The Defendants are also entitled to other remedies in the form of pre-judgment and post-

judgment interest and attorney fees and costs at an amount, if any, yet to be determined by the Court. Therefore, the Defendants are given until not later than thirty days following entry of this order to submit their request for interest and attorney fees and costs. The request should include the legal and factual basis for the amounts requested, and any grant of attorney fees will be based upon the *Lodestar* amount.

The Plaintiffs are given until not later than twenty days after Defendants' request is docketed to file a response, if they wish. Finally, the Defendants may offer a reply not later than fifteen days after Plaintiff's response is docketed.

**DONE** and **ORDERED** in Dayton, Ohio, this Eighteenth day of July, 2006.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-23-